## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

ROXANNE JARRARD,

     Plaintiff,

vs.                                  CIVIL NO. 03-1087 WJ/RHS

ERNESTO ROJAS, et al.,

     Defendants.

## MEMORANDUM OPINION AND ORDER
## DENYING MOTION FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Summary Judgment, filed on

June 9, 2004, by Defendants Ernesto Rojas and the City of Albuquerque (**Doc. 31**).   Having

considered all the pleadings, memoranda and other materials submitted by the parties, and after

considering oral argument of counsel,  I find that Defendants' motion is not well-taken and will be

denied.

The incident giving rise to this lawsuit occurred at the Albuquerque Airport between

Plaintiff and an airport police officer, starting with Plaintiff going to the airport to pick up her

mother, and ending with Plaintiff being handcuffed, arrested, and prosecuted on criminal charges,

which were later dismissed.  Defendant Rojas is accused of violating Plaintiff's federal civil rights

as well as her rights under state tort law.  Plaintiff alleges that as a result of Rojas' aggressive and

irrational demeanor and behavior in attacking her, she feared that she would be further injured by

Defendant.  Complaint, ¶¶10, 11.  Plaintiff seeks damages for physical injury as well as emotional

pain and suffering, including the loss of enjoyment of life.

The complaint asserts claims brought under 42 U.S.C. § 1983, as violations of the Fourth

Amendment based on seizure and arrest without probable cause (Count I), assault and battery

(Count II), and municipal liability based on *respondeat superior* under the New Mexico Tort

Claims Act (Count III).

Legal Standard

Summary judgment is warranted "if the pleadings, depositions, answers to  interrogatories,

and admissions on file, together with the affidavits, if any, show there  is no genuine issue as to

any material fact and that the moving party is entitled to a  judgment as a matter of law."

Fed.R.Civ.P. 56(c); Celotex Corp. v. Catrett, 477  U.S. 317, 322 (1986).  The Court considers

the facts and all reasonable inferences drawn from these facts in a light most favorable to the

nonmoving parties.  Hollander v. Sandoz Pharmaceuticals Corp., 289 F.3d 1193, 1214 (10th

Cir.2002).  Further, the evidence is viewed "in context, not simply in its segmented parts."

McCowan v. All Star Maint., Inc., 273 F.3d 917, 921 (10th Cir.2001).

**Background**

It is somewhat difficult to set out the facts in an orderly fashion, since the parties do not

agree exactly on how the events unfolded.   Since the Court is required on summary judgment

motions to view the facts in the light most favorable to the non-moving party, the factual

background is set out according to the Plaintiff's version. See Anderson v. Liberty Lobby, Inc.,

477 U.S. 242, 249- 50 (1986) (summary judgment material relied upon by the nonmovant is

viewed in the light most favorable to nonmovant); see Ex. A Response to Interrogatory No. 9,

description of incident; Response to Statement of Facts. The backdrop for the incident is the

arrival concourse at the Albuquerque Airport.  It is undisputed that in this area, there are two

lanes designated for through traffic (called "traffic lanes"), and one double-wide lane closest to

the curb for immediate loading and unloading of passengers.

On January 4, 2003, Plaintiff drove to the arrival concourse of the Albuquerque Airport to pick up her mother, where Rojas was on routine foot patrol telling drivers they could not stop outside the airport terminal unless they were actively loading or unloading passengers.[1] Plaintiff was aware at the time that motorists were not allowed to stop and park on the arrival concourse while waiting for friends or family to show up outside the terminal.

Plaintiff was first approached by Rojas while she was in the pickup lane.[2] Rojas told her to pull out and move out into the far lane, or through traffic lane. Plaintiff explained to Rojas that she was there to pick up her mother whom she expected to be in a wheelchair, and that she needed to keep moving up in that lane in order to be able to pull up to the curb when her mother came out, since she couldn't see the curb from the traffic lanes. Rojas' tone and demeanor at the outset as "angry." He told Plaintiff he didn't care, and to move into the through lane and "go around." Plaintiff moved out into the through lanes, but moved back into the pickup lane when she saw an opening a few car lengths up, continuing to move forward to the Southwest Airlines terminal. Rojas approached Plaintiff's car a second time, and told her to keep moving or he would give her a ticket. Plaintiff continued to move forward in the pickup lane because traffic was bumper-to-bumper and she could not move into the through lanes. Rojas approached

---

[1] Parties stipulate that Rojas was acting under color of law and within the scope of his duties as a City of Albuquerque Aviation Department police officer. Initial Pretrial Report at 2.

[2] Plaintiff refers to the farmost portion of the double-wide pickup lane as the "middle lane" -- which she occupied when Rojas first approached her car -- and the lane closest to the curb as the "curb lane." See, Pltff's Resp. to Undisp. Material Facts, ¶ 6. The differences in terminology are admittedly confusing without illustrations, but they are not material.

Plaintiff for a third time, told her she could not stop her vehicle in that lane and instructed her to pull into the far left lane.  Plaintiff adds that Rojas threatened to ticket her and "started screaming to pull out in the through lane."  Ex. A.

Plaintiff continued moving forward in the pickup lane, pulled up across a crosswalk, and then pulled into the lane nearest the curb after a car and a taxi to her right exited that lane. Defendant Rojas approached Plaintiff a fourth time.  Plaintiff could see his approach from her car mirror, "running up to the car screaming" with his arms "flailing in the air."  Ex. A.  Plaintiff got out of her car and met officer Rojas at the side of the vehicle to let him know what she was doing. Ex. D, 43:22.  Rojas informed Plaintiff that she was driving recklessly in the manner in which she had crossed the crosswalk, and he demanded to see her driver's license.

Plaintiff asked Rojas why he asked for her driver's license.  Rojas said that she drove recklessly across the crosswalk.  Plaintiff told him that she was traveling less than 15 miles per hour.  Rojas threatened to arrest her unless she showed him her license. According to Plaintiff, when she reached into her open car window to grab her purse, Rojas "assaulted" her from behind, hitting the back of her head, neck, shoulder blades and back, kicking her in her calves, and then threw her on the hood of her car with her arms locked behind her back.  Plaintiff describes the pain as so "intense" that she thought at first that she was hit by a car.  She turned her head to the left, saw Rojas' face, and felt him laying on her.  Plaintiff asked Rojas what he was doing, and he replied, "You were fleeing the scene."  Plaintiff told Rojas that he knew "very well" that she was trying to get her license. Ex. D, 53:1-4.  Rojas proceeded to handcuff Plaintiff, and continued to twist her arms, wrists and fingers while Plaintiff was sprawled on the hood of her car with Rojas lying on top of her.  Plaintiff noticed a woman walking in front of her who approached her with a

business card.  Rojas told the woman she was interrupting a police investigation and to move

away.  The woman said she wanted Plaintiff to have her card because she had seen what

happened.[3]  Another officer arrived at this time in response to Rojas' call for assistance, and

Plaintiff was moved into the street and off her car.

The majority of Plaintiff's description of her experiences after this point, particularly the

unpleasantness of her stay in the holding cell, are not relevant to the Fourth Amendment issues

raised in her complaint.  However, certain allegations could be considered relevant to the integrity

of Rojas' statements regarding Plaintiff's conduct, and therefore to the ultimate question of

whether Rojas had probable cause to arrest Plaintiff, or whether his actions stemmed from  purely

sadistic motives.  For example, in the police car on the way to the detention center, Plaintiff told

Rojas that she was not a criminal, and has never been one, to which he responded, "today I'm

going to make you a criminal."  When she asked Rojas why he was doing this to her, he replied,

"because I can."  Plaintiff also recalls Rojas asking other officers at the police station what he

should charge her with, going through a "big book" and asking "Is this a felony . . . Does anyone

know of a felony I can charge her with?"

According to Defendants' side of the story, after her third encounter with Defendant

Rojas, Plaintiff was "clearly agitated, and abruptly and recklessly" drove across two pedestrian

crosswalks, coming to a stop about 75 feet east of where she initially had stopped.[4]  Plaintiff got

---

[3]  This woman turns out to be one of the witnesses, Peggy Wells, whose deposition
portions are attached to the parties' briefs.  Ms. Wells states in her deposition that she was finally
able to place her business card in Plaintiff's pocket.  Ex. 5, 25:13-15.  However, in Plaintiff's
account, Rojas took the card.  Ex. A at 12.

[4]  These contentions are stated in Defendants' portion of the Initial Pretrial Report, at page
3.  Defendants' Undisputed Statement of Facts contained in the summary judgment motion is a

out of her car and started walking towards the airport terminal.  When Rojas approached her and

asked for identification, Plaintiff told Rojas that she did not have to show him anything.  Plaintiff

was loudly arguing with Rojas, causing a disturbance.  Plaintiff turned and went to the driver's

side of her car and started to reach into the car.  Rojas told Plaintiff not to reach into her car for

reasons of officer safety.  Plaintiff ignored Rojas and continued reaching into her car, when Rojas

physically restrained her and tried to place her under arrest.  Rojas called for assistance because

Plaintiff resisted so forcefully that he was unable to handcuff Plaintiff.  Rojas felt threatened by

Plaintiff, and felt justified in protecting himself from her.  Another officer responded to the call

and assisted Rojas in placing Plaintiff under arrest.  After being taken to the police office in the

terminal, Plaintiff was driven to the Bernalillo County Detention Center.

It is undisputed that Plaintiff did not see her mother waiting with her luggage ready to be

loaded into the car before she pulled her car up to the curb of the loading/unloading lane.  In fact,

Plaintiff did not actually see her mother waiting at the curb until Plaintiff was already sitting

handcuffed in the back seat of the police car being driven to the police substation.

Plaintiff was charged in Metropolitan Court with reckless driving, disorderly conduct,

---

sketchy account of the incident.  I have to agree with Plaintiff that the bare-bones approach in
Defendants' statement of facts 21 to 28 creates an erroneous and somewhat misleading
impression of the events, partly due to Defendants' chronological presentation of the facts in that
section.  For example, Defendants' Fact No. 21 states that Plaintiff was "making a scene" by
being loud, Fact No. 24 states that Rojas kept telling Plaintiff "to be quiet," and Fact No. 27
states that Rojas told Plaintiff to put her hands behind her back.  The actual order of events was
that Plaintiff's loudness and alleged noncompliance occurred only *after* Rojas grabbed Plaintiff's
arms to handcuff her.  See, Ex. G at 21: 23-25 ("He kept telling her to be quiet, or telling her to --
telling her to calm down, which is a little hard to do if somebody is twisting your arm behind your
back"); Ex. I at 13:11-20.

resisting or obstructing an officer/refusing to obey.   Metropolitan Court Judge Denise Barela

Shepherd dismissed the charges.[5]

## Discussion

Plaintiff was arrested and charged under N.M.S.A. 1978, § 66-8-113 (reckless driving);

N.M.S.A. 1978, § 30-22-1 (resisting, evading or obstructing an officer); and N.M.S.A. 1978 §

30-20-1 (disorderly conduct).  There was also in effect at the time an Albuquerque Municipal

Ordinance § 8-5-1-2 which placed "loading or unloading" restrictions on the curb loading lane at

the airport concourse. See Exs. E, F.   Defendants contend that Rojas had discretion to arrest

Plaintiff for refusing to obey his instructions (under § 66-8-113) and for engaging in disorderly

conduct (under § 30-20-1).  They also argue that Rojas had probable cause to arrest Plaintiff for

violation of the municipal ordinance, under which Plaintiff was apparently arrested but not

charged.

## I.       Fourth Amendment - Arrest without probable cause (Count I)

While Defendants focus on Officer Rojas' "discretion" to arrest Plaintiff, the correct

standard is whether he had probable cause to do so.  Warrantless public arrests do not violate the

Fourth Amendment if they are based upon probable cause that the person arrested has committed

a felony, or, as in this case, if based upon probable cause that the person has committed a

misdemeanor in the officer's presence.  U.S. v. Watson, 423 U.S. 411, 422-24 (1976).  Probable

cause exists if facts and circumstances within the arresting officer's knowledge and of which he or

---

[5] Defendants characterize the dismissal as a result of Judge Shepherd "mistakenly" believing that the City of Albuquerque did not provide Plaintiff with full discovery.  Defendants have filed a motion in limine, which is pending, to exclude evidence regarding Plaintiff's acquittal in Metropolitan Court.  See, Doc. 33.

she has reasonably trustworthy information are sufficient to lead a prudent person to believe that

the arrestee has committed or is committing an offense.  Romero v. Fay, 45 F.3d 1472, 1476

(10th Cir. 1995); see State v. Salas, 127 N.M. 686, 690 (Ct.App.1999) (citing Boone v. State,

105 N.M. 223, 226 (1986)); N.M.S.A. 1978, § 3-13-2(A)(4)(d) (warrantless arrests by police

officers).

In ascertaining whether an offense is being committed in an officer's presence, the officer

may take into account what the officer observes through use of any of his or her senses.  Salas,

127 N.M. at 690.  Not only must the officer perceive through his or her senses that an offense is

being committed, but the officer must also have a reasonable ground to infer that the suspect is

committing an unlawful act to meet the probable cause requirement.  State v. Galloway, 116 N.M.

8, 11 (Ct.App.1993).  Thus, while an officer may rely on "discretion" in order to determine

whether an unlawful act has occurred, that discretion must still be within reasonable bounds.

A.    Disorderly Conduct

N.M.S.A. 1978 § 30-20-1 prohibits a person from "engaging in violent, abusive, indecent,

profane, boisterous, unreasonably loud or otherwise disorderly conduct which tends to disturb the

peace. . . ."  Conduct which tends to disturb the peace is conduct "which is inconsistent with the

peaceable and orderly conduct of society."  State v. Oden, 82 N.M. 563, 565 (Ct.App.1971).

To violate Section 30- 20-1, an individual's conduct must have been indecent or profane,

and tended to disturb the peace.  Id.  The question here is whether Rojas had reasonable grounds

to infer that Plaintiff's conduct was of the type envisioned by the statute, and tended to disturb the

peace.

Defendants' references to Plaintiff's loud and boisterous behavior (Facts 21, 22, 24 and

25) may seem at first to provide a basis for probable cause for arrest under the statute.  The

problem is that, as Plaintiff correctly contends, and as other evidence indicates, that conduct did

not occur until *after* Rojas had allegedly started handling Plaintiff roughly as he hit her on her

upper body, kicked her legs, and twisted her arms in an attempt to handcuff her.  See, Ex. G at

21: 23-25.   There is no evidence that Plaintiff's conduct was "violent, abusive, indecent, profane,

boisterous, unreasonably loud or otherwise disorderly" before that point.  For instance, Peggy

Wells, the woman who witnessed the incident and offered Plaintiff her business card, remembers

that both Plaintiff's and Rojas' voices were "somewhat raised" but that "they weren't shouting."

Ex. 5 at 19:14-18.   She recalled that Plaintiff "was trying to explain to the policeman that she

needed to pick up someone in a wheelchair."  Ex. 5 at 19:21-24.

Voices that are "somewhat raised" (and I note that the level of Rojas' voice is included in

the description as well as Plaintiff's) do not necessarily  infer conduct that tends to disturb the

peace and quiet of the community.  If Plaintiff's behavior eventually escalated to a level that more

closely constitutes such conduct, a dispute of fact still exists as to whether Rojas had probable

cause to arrest her on the charge of disorderly conduct.  All the available evidence, including the

evidence submitted by Defendants, shows that if Plaintiff *was* "making a scene" and "being loud,"

that behavior occurred during the time Plaintiff alleged Rojas was assaulting her.  Under Plaintiff's

factual account, Rojas himself created the probable cause for arrest.  Therefore, I find there is a

dispute of material fact regarding whether Defendant Rojas had probable cause to arrest Plaintiff

for disorderly conduct.

B.     Resisting or Obstructing an Officer/Refusing to Obey

Defendants contend that Plaintiff's failure, on more than one occasion, to move into the

far lane, and stopping her vehicle to get out, constitute conduct that violated N.M.S.A. 1978, §

30-22-1 (resisting, evading or obstructing an officer).  In determining whether Rojas had probable

cause to arrest Plaintiff under this statute, it is helpful to know what conduct constitutes a

violation of the statute.  The general rule is that "merely remonstrating with an officer in behalf of

another, or criticizing or questioning an officer while he is performing his duty, when done in an

orderly manner, does not amount to obstructing or delaying an officer in the performance of his

duties." 66 A.L.R.5th 397; see, e.g., People v. Weathington, 411 N.E.2d 862 (1980) (under

Illinois law, merely arguing with an officer did not present the requisite physical act of resistance

or obstruction); State v. Tages, 457 P.2d 289 (1969) (mere remonstration is not sufficient to

support a charge of obstruction) (applying Arizona statute).

Viewing the facts relative to Plaintiff's conduct at different times during the incident, I

cannot conclude that, as a matter of law, Rojas had probable cause to arrest Plaintiff for

disobeying his commands or otherwise obstructing him.  When first approached, Plaintiff

complied with Rojas' demand to pull out into the through traffic lanes.  Plaintiff's return to the

outside curb lane was to check for her mother.  There is evidence that when Rojas told her to

move a second time, Plaintiff tried to comply but could not, because she was blocked by bumper-

to-bumper traffic in the other lanes.  Cmp., Mackinney v. Nielsen, 69 F.3d 1002, 1008 (9th Cir.

1995) (failure to comply immediately with an officer's requests is not obstruction of justice).

Plaintiff's position is bolstered by Defendants' own contention that at one point when Rojas told

Plaintiff to move, she "told officer Rojas to make other cars move from the area."  IPTR at 3.

Also, by Rojas' own statements, Plaintiff's driving over the crosswalks did not violate his

instructions; it was the manner in which she allegedly crossed.  Ex. 4 at 65:3-11.  A reasonable

juror could decide that Rojas had no reason to infer that Plaintiff was refusing to comply with his

instructions, such that the probable cause requirement was met.

C.        Municipal Ordinance

The parties have stipulated that Plaintiff was charged with reckless driving, disorderly

conduct, and interfering with an officer/refusing to obey.  However, Defendants also argue that

Defendant had probable cause to arrest Plaintiff for violation of Albuquerque Municipal

Ordinance § 8-5-1-2, which prohibits stopping or parking on the curb loading lanes at the airport

concourse.  Defendants contend that probable cause to arrest existed because Plaintiff repeatedly

ignored Rojas' instruction to keep moving until she saw her mother standing on the curb with her

luggage.  The case on which Defendants rely, Foster v. Metropolitan Airport Commission, 914

F.2d 1076 (8th Cir. 1990), is easily distinguished from the facts in the instant case.  The plaintiff in

Foster refused at least twice the officer's request to move his car and remained parked for

approximately five minutes before the officer issued him a ticket -- which the plaintiff tore up.

The Eighth Circuit affirmed the district court's grant of summary judgment, holding that the

officer had probable cause to arrest plaintiff for refusing to move his car and interfering with the

officer's duty to keep traffic moving in violation of a Minnesota statute.  914 F.2d at 1078.   In

the instant case, Plaintiff at no time verbally refused to comply with Rojas' requests, and was not

parked in the curb loading lane for a long period of time.

I have already examined Plaintiff's conduct with regard to probable cause for her arrest

for failing to comply with Defendant Rojas' instructions.  Since these instructions were given to

carry out the requirements under the municipal ordinance, the facts included in that discussion, as

well as the analysis of the facts, would be the same here.  At this juncture, a reasonable juror

could conclude that Rojas did not have probable cause to arrest Plaintiff for violation of the

municipal ordinance.

D.      Reckless Driving

Defendants do not move for summary judgment with regard to whether Officer Rojas had

probable cause to arrest Plaintiff for reckless driving.   Nor do Defendants offer any statement of

undisputed facts on this issue.[6]  In his deposition, Rojas stated that Plaintiff crossed at an unsafe

speed, Ex. 4 at 73, given the number of pedestrians, that Plaintiff "gunned the engine," and was

driving 15 to 20 mph.  Ex. 4 at 75:21-22.   However, he also conceded that no pedestrian was

either on the crosswalk or ready to cross.

Rojas' deposition, attached as an exhibit to Defendants' motion, does not qualify as a

statement of undisputed fact.  Plaintiff has alleged that Defendant had no probable cause to arrest

her.  Yet Defendants have decided not to set out any facts on the issue of Plaintiff's reckless

driving, and in turn the existence of probable cause to arrest Plaintiff on that basis.  See,

D.N.M.LR-Civ.56(b) ("The memorandum in support of the motion must initially set out a concise

statement of all of the material facts as to which movant contends no genuine issue exists").

Plaintiff is not obligated to offer facts to show that a genuine issue of fact exists where Defendant

has not offered any fact to rebut.   Therefore, I consider Plaintiff's allegations of arrest without

---

[6] Defendants do not even mention the statute that applies.  The New Mexico statute prohibiting reckless driving, N.M.S.A. 1978, § 66-8-113 states in part: "A. Any person who drives any vehicle carelessly and heedlessly in willful or wanton disregard of the rights or safety of others and without due caution and circumspection and at a speed or in a manner so as to endanger or be likely to endanger any person or property is guilty of reckless driving." Evidence of "reckless disregard" must show that the individual's state of mind was "one of utter irresponsibility or conscious abandonment of any consideration for safety. . . ." Valencia v. Dixon, 1971, 83 N.M. 70, cert. denied, 83 N.M. 57.

probable cause for the charge of reckless driving as unchallenged by Defendants in this motion.

Defendants could defeat Plaintiff's Fourth Amendment claim on summary judgment if they could show that, as a matter of law, Defendant Rojas had probable cause to arrest Plaintiff for any one of the violations for which she was charged.  See, Biddle v. Martin, 992 F.2d 673, 677 (7th Cir. 1993) (not necessary to consider all the possible charges plaintiff's conduct might support, where officer had probably cause to arrest plaintiff for one of the charges, e.g., disorderly conduct); see also, United States v. Rambo, 789 F.2d 1289, 1294 (8th Cir. 1986) (where a defendant is arrested for the wrong offense, the arrest is still valid if probable cause existed to arrest the defendant for a closely related offense); accord, Mills v. Wainwright, 415 F.2d 787, 790 (5th Cir.1969).  Here, a dispute of fact exists regarding whether Defendant Rojas had probably cause to arrest Plaintiff on all the charges raised by Defendants in the motion.  Therefore, Defendants are not entitled to summary judgment on Plaintiff's Fourth Amendment claim.

E.    Excessive Force

Defendants' characterization of the complaint is that it contains the "sole federal claim" of arrest without probable cause.  Defts' Mem. Brf. at 1.  In  Count II of the complaint,  Plaintiff alleges a state tort claim of assault and battery by Defendant Rojas.  However, a prohibition against excessive force in the course of an arrest, investigatory stop, or other "seizure" of a free citizen is also part and parcel of the rights afforded under the Fourth Amendment.

While Count I of the complaint does not expressly assert an excessive force claim in so many words, the factual allegations set forth in the Fourth Amendment claim clearly support such a claim.  See, Crull v. GEM Ins. Co., 58 F.3d 1386, 1391 (9th Cir. 1995) ("pleadings need not identify any particular legal theory under which recovery is sought") (citations omitted).  In

paragraph 14 of the complaint, Plaintiff asserts that Defendant Rojas deprived Plaintiff of her

Fourth Amendment rights by "attacking and grabbing" her, and that this conduct caused her "to

suffer personal injuries." Complaint, ¶ 15.  Although Defendants have apparently not recognized

Plaintiff's excessive force claim, and have not addressed it in this motion, the claim is nevertheless

alive and well.  Again, because Defendants have not submitted any argument or statement of fact

on this issue, Plaintiff was not required to respond.

## II.     Assault & Battery (Count II)

Plaintiff asserts a state law claim of assault and battery under supplemental jurisdiction in

the complaint, ¶ 3, but does not expressly mention the New Mexico Tort Claims Act, N.M.S.A.

1978, § 41-4-1 to § 41-4-27, anywhere in the complaint, or state under which specific provision

of the Act she brings the claim of assault and battery.[7]  The Court limits its analysis to what

Defendants have raised in this motion, i.e., the merits of the claim.

Defendants accurately state the law on this issue. An officer attempting to conserve peace

is entitled to use such force as reasonably necessary under the circumstances of the case.  Mead v.

O'Connor, 66 N.M. 170, 173 (1959); State v. Prince, 126 N.M. 547, 552 (N.M.App.1998) (so

long as officers act in good faith and use no more force than reasonably necessary to preserve the

peace, they are accorded reasonable latitude in the use of force).  However, what Defendants have

not done is present undisputed facts which show that Plaintiff's behavior constituted a threat

sufficient for Rojas to use the degree of force as described by Plaintiff.

---

[7] Section 41-4-12 of the New Mexico Tort Claims Act sets forth the specific torts for
which immunity has been waived for law enforcement officers.  This section waives immunity for
various injury resulting from "assault, battery, false imprisonment, false arrest, malicious
prosecution, abuse of process, libel, slander, defamation of character, violation of property rights
or deprivation of any rights" secured by the constitution.

As an example of behavior that could have been interpreted as threatening, Defendants use Plaintiff's gesture of putting "both hands up, palms forward at shoulder level" which accompanied her response to Rojas' request for her license, and her statement of "Fine, I'll get it for you." Ex. D, at 50:6-11. In the context of the situation, interpreting the gesture as threatening seems improbable, if not ridiculous. It certainly does not entitle Defendant to summary judgment. Equally implausible was Rojas' comment to Plaintiff that she was "fleeing the scene" when she was standing at her car and reaching into it for her purse after Rojas asked her for identification. If she was attempting to run away, why was she reaching into the car? If she was reaching into the car, how was she fleeing the scene? As previously noted, under Defendants' factual narrative, Plaintiff started walking towards the terminal after exiting her car. Whether Plaintiff left her car to talk to Rojas, or intended to go inside the terminal, is a material fact which could form the basis for Rojas' statement that she was fleeing the scene if the incident happened according to Defendants' description. For now, the fact is disputed and precludes summary judgment for Defendants.

Moreover, as Defendants failed to do on the reckless driving violation, they do not present any undisputed facts concerning Plaintiff's conduct which show that Rojas was reasonable to feel threatened, and reasonable to use force to subdue or control Plaintiff or to defend himself. There is, however, more evidence which supports Plaintiff's allegations that Rojas used unreasonable force. Ms. Wells, a passerby who witnessed the incident, was sufficiently repulsed by what she observed of Rojas' conduct that she felt compelled to put her card in Plaintiff's pocket:

      Q.     Do you know what orders he was giving her?
      A.     Not specifically. He seemed to be hassling her for being there, her car being there. (Ex. 5 at 20:10-12).

15

and

> The next thing that really caught my attention is that he grabbed her, her arms, for no reason, that I could see.  (Ex. 5 at 21:2-4).

and

> Q.      So when he twisted her right arm behind her back, her back was to him?
> A.      That's right.
> Q.      What's the next thing that you recall?
> A.      She cried out.  She was alarmed, she said he was hurting her.  (Ex. 5 at 22:4-9).

and

> A.      [after seeing Rojas "pull" Plaintiff's right arm up behind her back]: . . . the situation was becoming worse by the minute and I decided there was probably nothing that I could do right then and there that wouldn't make the situation worse, because the policeman's attitude [sic].
> Q.      What was his attitude?
> A.      Very nearly hostile.  He was angry.  (Ex. 5 at 23:4-12).

and

> Q.      What did you do with your business card?
> A.      I attempted to put it in her pocket, the policeman spoke to me and told me to step back, and I hesitated a moment and then I said, I'm giving her my card.  And since he didn't do anything more, I slipped it in her coat pocket.
> Q.      Is there a reason why you did not follow the officer's instructions and step back?
> A.      I was doing something that I considered completely legitimate, and I wasn't interfering with the arrest, I knew that. . . . (Ex. 5 at  24 and 25).

Ron Davis and his wife also witnessed the incident from the point at which Plaintiff tried to reach across into her car:

> Q.      Could you see her head at that point?
> A.      Yeah, yeah, she was bracing herself and reaching for something.  When she stood back up is then when Officer Rojas twisted her arm and  –
> Q.      When she stood back up, did she have anything in her hands?
> A.      I couldn't see, I was looking more at him at that point, because that was a little alarming.  Ex. G at 20:5-12.

16

and

> Q.    Do you recall how he grabbed her left arm?
> A.    Well, he grabbed her wrist and then twisted it behind her and then lifted it up towards her shoulder blades.
> Q.    Where was your wife at this point?
> A.    She was beside me.  I couldn't – I don't recall exactly when my wife moved.  We were both transfixed by what was going on in front of us.  Ex. G at 20-21:21-25, 1-3.

and

> Q.    What's the next thing that you recall?
> A.    I recall her saying very loudly something like, what's happening, what are you doing, and at some point, you're hurting me. . .        .
> Q.    . . . And how did he try to make her quiet?
> A.    He kept telling her to be quiet, or telling her to – telling her to calm down, which is a little hard to do if somebody is twisting your arm behind your back.  Ex. G at 20:22-25.

Viewing the evidence favorably to Plaintiff,  I conclude that a reasonable jury could return a verdict for the Plaintiff on this issue, deciding that Defendant Rojas used more force than was reasonably necessary in the particular circumstances of the case.  Therefore, Defendants are not entitled to summary judgment on Count II of the complaint asserting a claim for assault and battery.

## III.    Municipal Liability (Count III)

Plaintiff's claim against the City is based on *respondeat superior* under the Tort Claims Act.  Complaint, ¶ 21.  Thus, the success of Defendants' argument on this claim is hitched to a finding by the Court that Defendant Rojas did not commit assault and battery against Plaintiff.[8]

---

[8] For some reason, Defendants rely on the failure of *both* the arrest without probable cause claim, and the assault and battery claim, to support the dismissal of Count III.  The assault and battery claim is clearly brought under state tort law, but the arrest without probable cause is asserted under § 1983 based on a Fourth Amendment violation.   A municipality cannot be held liable for the actions of its employees under the theory of *respondeat superior*.  Monell v. Dep't

Because I have indicated above that there exists a dispute of fact on that question, Defendants are not entitled to summary judgment on Plaintiff's municipal liability claim in Count III.

### Conclusion

Defendants are not entitled to summary judgment because they have not established, under the appropriate summary judgment standard, that Rojas had probable cause to arrest Plaintiff. For reasons given above, disputes of fact exist as to whether Rojas had reasonable grounds to infer either that Plaintiff was engaging in disorderly conduct, refusing to comply with his instructions, or violating the municipal ordinance regarding loading and unloading on the arrival concourse. Consequently, there are disputes of fact regarding whether Rojas had probable cause to arrest Plaintiff for any of those violations. Defendants ignored Plaintiff's reckless driving violation in this motion, and thus the Court did not address it.

On Plaintiff's assault and battery claim, I find that a reasonable juror could conclude that Defendant Rojas used more force than was reasonably necessary in the particular circumstances of the case. Finally, Defendants are not entitled to summary judgment on Plaintiff's municipal liability claim in Count III because a dispute of fact exists regarding Plaintiff's assault and battery claim.

---

of Soc. Serv., 436 U.S. 658, 691 (1978). Instead, it must be shown that the unconstitutional actions of an employee were representative of an official policy or custom of the municipal institution, or were carried out by an official with final policy making authority with respect to the challenged action. See, Pembaur v. City of Cincinnati, 475 U.S. 469, 480-83 (1986) (plurality opinion); Seamons v. Snow, 206 F.3d 1021, 1029 (10th Cir. 2000). The factual allegations in the complaint do not support a claim for municipal liability under § 1983. Thus, the only basis for municipal liability asserted in the complaint comes out of the assault and battery claim under the Tort Claims Act.

**THEREFORE,**

**IT IS ORDERED** that Defendants' Motion for Summary Judgment (**Doc. 31**) is hereby

DENIED for the reasons set forth in this Memorandum Opinion and Order.


                                        _____

                                  UNITED STATES DISTRICT JUDGE